## ORY v. UNITED STATES.

### No. 14426.

United States Court of Appeals
Fifth Circuit.

Aug. 25, 1953.

Victor V. Blackwell, Covington, La., for appellant.

John N. McKay, U. S. Atty., and Richard C. Baldwin, Asst. U. S. Atty., New Orleans, La., for appellee.

Before HOLMES, BORAH, and RIVES, Circuit Judges.

BORAH, Circuit Judge.

Appellant was convicted under the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, §§ 451–470, for knowingly failing to obey an order of his Selective Service local Board to be inducted into the armed forces of the United States.

He contends here that: (1) the Government's case contained no competent and legal evidence that defendant was ever found physically and mentally fit and acceptable for military service, consequently, the order to report for induction was premature, invalid and null, and defendant was under no legal duty to obey said order, either to report for or submit to induction into the armed services; (2) the order to report for induction was addressed to Henry J. Ory and not Harry Joseph Ory, defendant in this cause and thus imposed upon defendant no legal duty to obey said order; (3) the action of the local Board in failing to place in defendant's cover sheet as a part of his file a more substantial portion of the testimony given at his personal appearance before the Board, and especially the Board's instruction to the Clerk of said Board to omit portions of the testimony bearing upon defendant's status as a minister, violated Selective Service regulations and procedural due process of law applicable thereto, contrary to the Fifth Amendment to the United States Constitution; (4) the local Board arbitrarily and capriciously ignored the super abundance of evidence in defendant's cover sheet showing unmistakably that he was an ordained minister of religion contrary to the guarantees of due process of law contained in the Fifth Amendment to the United States Constitution; (5) since the undisputed evidence as of the date of defendant's final classification shows defendant to be an ordained minister of religion, the local Board, in ordering him to report for induction into the armed services, exceeded its jurisdiction and authority and violated due process of law as guaranteed by the Fifth Amendment to the United States Constitution.

■ The first contention of appellant that the Government offered no competent evidence to show that the defendant was ever found physically and mentally fit and acceptable for military service deserves but scant attention. At the trial the Clerk of the local Board identified the report of appellant's medical examination and this report was offered in evidence as an exhibit without objection. This report bears the notation "Examinee is qualified."

■ As to the second contention that no duty was imposed upon the defendant to obey the order to report for induction addressed to Henry J. Ory we need only to examine the record for its refutation. It appears that the local board sometimes addressed mail to appellant in the name of "Harry J. Ory" and at other times he was addressed as "Henry J. Ory". Appellant called the Board's attention to the fact that his name was "Harry J. Ory" but continued to receive notices and other mail, including the notice to report for induction in the name of "Henry J. Ory". It further appears that the Selective Service cover sheet and file in the name of "Henry J. Ory", was that of appellant; that appellant was the person so addressed and that there was no other person of that name on the rolls of the local Board; that appellant's serial number was on all correspondence and remained the same; that appellant knew he was the person called and addressed as "Henry J. Ory" and obeyed the order to report for induction so addressed which was mailed to him on January 19, 1951. In the light of these facts it is apparent that there is likewise no merit in appellant's second point.

■ The third contention of appellant is that the local Board violated Selective Service regulation and procedural due process in failing to place in appellant's cover sheet as a part of his file a more substantial portion of the testimony given at his personal appearance before the Board.

Selective Service Regulation 1624.2(b) reads as follows:

"At any such appearance, the registrant may discuss his classification, may point out the class or classes in which he thinks he should have been placed, and may direct attention to any information in his file which he believes his local board may have overlooked or to which he believes it has not given sufficient weight. The registrant may present such additional information as he believes will assist the local board in determining his proper classification. Such information shall be in writing, or, if oral, shall be summarized in writing *by the registrant* and, in either event, shall be placed in the registrant's file. The information supplied should be as concise as possible under the circumstances. The member or members of the local board before whom the registrant appears may impose such limitations upon the time which the registrant may have for his appearance as they deem necessary." (Emphasis supplied.)

The record shows that appellant appeared at the hearing before the local Board and discussed with the members of the Board his claim of exemption on the ground that he was a minister. The hearing lasted from half an hour to 45 minutes and the record of the hearing was summarized on a single sheet of paper and placed in appellant's file. As the hearing progressed, the Board directed the Clerk what to put down and what not to put down. It is clear from the testimony that this was done because of the fact that during a large part of the time appellant was reading from religious books or papers or discussing his religious beliefs. His complaint is that all of the hearing should have been reported and placed in his file, but according to the regulation quoted the duty was upon him and not upon the Board to put in writing the information he desired placed in his file. However, the Board's summary was placed in his file and considered by the board of appeal and there is nothing in the evidence to show that any matter material and pertinent to appellant's claim of exemption was omitted from the summary.

The two remaining contentions of appellant are that the Board arbitrarily ignored the evidence which showed that he was an ordained minister of religion and wrongfully and without authority ordered him to report for induction into the armed services. They will be considered together as they both involve a consideration of the facts which were established at the trial.

In September 1948, appellant registered as Harry Joseph Ory with local Board #41, giving his occupation as "Show Beyenes." He was at that time a member of Hq. Co. 39th Inf. Division, a reserve unit. On May 3, 1949, the local Board received appellant's questionnaire in which appellant had checked off the statement "I now have no employment nor am I a full-time student", and gave the "Other business or work", in which he was then engaged as "Entertainer, Puppetry Work" and his prior work experience as "Motion Picture Advt. Co. Employee Johns Manville Co." and the number of years of schooling completed by him as "8 years of elementary school." On May 31, 1949, and because of his membership in the organized reserve he was placed in Class 1 D and was so notified two days later. On July 19, 1949, and after being advised that appellant had been honorably discharged on April 1, 1949, from Hq. Co. 39th Inf., the local Board placed him in Class 1 A and so notified him on the following day.

On November 7, 1950, the local Board mailed appellant SSS Form 223 being an order to report for armed forces physical examination on November 22, 1950. Prior to the latter date appellant orally requested a hearing before the Board. On November 16, 1950, he filed a written request for a change of classification, stating that he had been raised a christian; been schooled at an early age for the ministry; abandoned thought of it for a while; enlisted in, and was later honorably discharged from, the 39th Inf. Div., National Guard; begun to read Watchtower books; determined to devote the rest of his life to ministry; entered the Theocratic Ministry School and had taken an advanced course and become an ordained minister of Jehovah's Witnesses in September, 1949. He further stated that he averaged about 42 hours a

month and some months more in ministry service, teaching and preaching; conducted Bible studies; had an assigned territory; was recognized by his friends and the congregation he served as an ordained minister; and took an active part in instructing other ministers like himself. He filed with this statement the affidavit of a Company Servant and Divinity School Servant of Jehovah's Witnesses and the affidavit of an Assistant Company Servant, both of New Orleans, Louisiana, stating that appellant was recognized by them and the congregation in New Orleans, Central Unit, as an ordained minister in a definitely assigned territory and enrolled in the Theocratic School of Ministry in New Orleans. On November 20, 1950, appellant filed three more affidavits substantially to the same effect and to the further effect that appellant did house to house preaching, had been baptised as one of Jehovah's Witnesses and held regular Bible study with family groups. On November 21, 1950, he filed two affidavits and on November 22, 1950, two more, all to the same general effect as those previously filed. On November 22, 1950, appellant was medically examined, found acceptable for induction into the armed services and a Certificate of Acceptability was executed. On the same day appellant was given a hearing before the local Board. The hearing lasted from half to three-quarters of an hour and appellant was given every opportunity to present his claim for exemption as a "regular or duly ordained minister of religion" under §§ 6g and 16g of the Universal Military Training Act.[1] During the course of the hearing notations were made by the secretary of such parts thereof as the Board members instructed her to take, she being directed to leave out the parts where appellant read from religious literature or gave his religious beliefs. A summary of the hearing, containing the matter so taken down, was later prepared by the secretary and placed in appellant's file. This summary is set forth in the margin.[2]

On November 28, 1950, a Certificate of Acceptability, Form NME 62 was mailed to appellant. On December 12, 1950, appellant filed the certificate of ordination requested by the Board at the hearing of November 22, and on December 19, the Board met, considered the certificate furnished by appellant, and by a vote of 3 to 0 continued him in Class 1A as it "did not comply with the regulations asked of him on November 22, 1950." Appellant was duly notified of the Board's action on the following day. Six days later, appellant wrote a letter requesting an appeal to the board of appeal from the order continuing him in 1A. On December 27, 1950, he filed three more affidavits similar to those previously furnished, though one did state that appellant was "regularly and not incidentally" engaged in the duties of a duly ordained minister. Two days later he wrote a letter re-

1. 50 U.S.C.A. Appendix §§ 456(g) and 466 (g).

2. "November 22, 1950.
   "Henry J. Ory Order No. 16-41-29-278 came to be (sic) board practically every day with a letter stating he was a Johoval (sic) Witness and preached the Gospel to the Faithful. On this day the Board was meeting and the Board granted him an appearance even though his appeal period had lapsed.
   "After introducing him to the Board Members who were Mr. Teijelo, Chairman, Mr. James Kraus, Secretary and Mr. Alvin Shepherd, Member he was asked to state his case. After telling them that he was a Minister of Religion and asked them to consider his case for a 4-D Classification he was asked the following questions:

"Mr. Kraus: Are you employed at the present time? And the answer to which Mr. Ory replied was
   "Mr. Ory: I have been employed as an entertainer with a puppet show with the NORD Organization, and formerly I was employed with a Local Department store as a salesman. My income from the preaching is not sufficient for me to survive as I have to live.
   "Mr. Kraus: How many hours do you work preaching the Gospel a week?
   "Mr. Ory: Approximately 20.
   "After a long session with the Board he was informed that if he would furnish them with a Certificate of Ordination and would comply with Section 16 Paragraph g, sub paragraph 3 that he would be entitled to a 4-D Classification, and then the Board would place him in his proper class."

questing another personal appearance before the local Board. This letter was not received by the Board until January 3. The day previous the file had been sent to the board of appeal and appellant was so notified, and told that he would be advised of that board's decision. On January 16, 1951, by a vote of 3 to 0, the board of appeal continued appellant in 1A and appellant was so notified two days later. On the next day, January 19, 1951, appellant was mailed SSS Form 252, "Order to Report for Induction", returnable on February 19, 1951. On January 22, appellant wrote asking for an appeal to the President, and by letter on the following day he was advised that such an appeal could not be granted since the decision of the board of appeal had been unanimous.

The record shows that both the local Board and the board of appeal had before them and duly considered everything in appellant's file on the respective dates of making their decisions.

The gist of appellant's argument is contained in this one sentence: "We have here the situation of a registrant who submitted exhaustive and uncontradicted documentary evidence that he was a minister of religion but who was denied this exempt status under the act solely because he was not a full-time minister." But the law does not say that all "ministers of religion" shall be exempt but only that regular ordained ministers of religion as defined in the act should be so exempt.[3] By definition in the act a duly ordained minister of religion must not only be ordained but must, as his regular and customary vocation preach, teach and administer,[4] while a regular minister of religion must also, as his customary vocation preach and teach though he need not be ordained.[5] Furthermore the act provides that neither term is to include a person who irregularly or incidentally preaches and teaches, or a duly ordained minister who does not regularly, as a vocation, teach, preach and administer.[6]

The principles of law applicable on appeal in a case such as this are fully stated in our opinion in Neal v. United States, 5 Cir., 203 F.2d 111, 117. As stated therein "If there is any rational basis of fact for the classification, the board's action will be sustained. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; United States ex rel. Hull v. Stalter, 7 Cir., 151 F.2d 633."

It is apparent here that the members of the local Board, considering all the

---

3. "(g) Regular or duly ordained ministers of religion, as defined in this title (sections 451–454 and 455–471 of this Appendix), * * * shall be exempt from training and service (but not from registration) under this title (said sections)." Title 50 U.S.C.A.Appendix, § 456(g).

4. "(g) (1) The term 'duly ordained minister of religion' means a person who has been ordained, in accordance with the ceremonial ritual, or discipline of a church, religious sect, or organization established on the basis of a community of faith and belief, doctrines and practices of a religious character, to preach and to teach the doctrines of such church, sect, or organization and to administer the rites and ceremonies thereof in public worship, and who as his regular and customary vocation preaches and teaches the principles of religion and administers the ordinances of public worship as embodied ·in the creed or principles of such church, sect, or organization." Title 50 U.S.C.A.Appendix, § 466(g) (1).

5. "(2) The term 'regular minister of religion' means one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, sect, or organization as a regular minister." Title 50 U.S.C.A.Appendix, § 466(g) (2).

6. "(3) The term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally preaches and teaches the principles of religion of a church, religious sect, or organization and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite, or discipline of a church, religious sect or organization, but who does not regularly, as a vocation, teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect, or organization." Title 50 U.S.C.A.Appendix, § 466(g) (3).

facts before them, and while admitting appellant to be a duly ordained minister of religion did not believe that he was such duly ordained minister of religion as was intended by the Act in the light of its definition of that term, in that appellant only irregularly or incidentally preached or taught, or did not teach, preach and administer regularly and as a vocation, or for both reasons. In the light of the facts before the Board and detailed earlier herein, we cannot say that its action was without rational basis in said facts. In Cox v. United States, supra, the facts were very similar to those herein and much stronger from the defendant's standpoint, and the court there declared that the relatively small amount of time spent by the petitioners in religious activities was sufficient for the board to deny them a minister's classification. Furthermore it is significant to note that at the time when the Cox decision was rendered the definitions set out in the Act were not as specific and limiting as they were at the time of the Board's classification of appellant.

We perceive no error to appellant's prejudice in the record.

Judgment affirmed.