**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Roberto Alfredo DAVILA, Defendant-
Appellant.**

No. 28076.

United States Court of Appeals,
Fifth Circuit.

July 1, 1970.

Rehearing Denied and Rehearing En
Banc Denied Sept. 4, 1970.

Frank Masters, San Antonio, Tex., court-appointed, for appellant.

Seagal V. Wheatley, U. S. Atty., Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before JOHN R. BROWN, Chief Judge, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Davila was denied the classification of conscientious objector by his local draft board. Thereafter he refused to submit to induction, and was convicted by a jury of such refusal, 50 U.S.C. App. § 462(a). We reverse because Davila presented a prima facie case for CO status and the board acted without basis in fact in denying his claim.

In November, 1965, Davila, then in high school, completed a Current Information Questionnaire, SSS Form 127, and requested that he be sent a copy of SSS Form 150 so that he might claim CO status. A form was not sent. He was deferred for his high school studies until December, 1967, when he was reclassified I–A (eligible for active military service). On February 14, 1968, it was noted that Davila had claimed to be a conscientious objector but had not been sent a Form 150. A copy was mailed to him, and he completed and returned it on February 26. On March 13, the local board considered the request and continued Davila in class I–A, entering no findings in the file. Registrant was notified of this action and was sent an accompanying notice of his rights to personal appearance and appeal and of the availability of an appeals agent to assist him. He took no action and was ordered to report for induction. On June 6, he refused to submit.

Registrant's Form 150 presented a prima facie case for conscientious objector status. The statute exempts

any person [from] combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.

50 U.S.C. App. § 456(j).

■ Registrant recited that he was a baptized member of the Jehovah's Witnesses sect. In explication of his personal religious views he stated:

According to 2 Tim. 2:3 I am a soldier of Christ. We are to be in subjection to the authority of this land according to Rom. 13:1. This is a relative subjection, when the laws of this land come in conflict with God's laws then we must do as Acts 5:29 states, "we must obey God rather than man."

Davila went on to state, in response to a question on the Form, his interpretation of "the creed or official statements of [his] religious sect or organization in relation to participation in war:"

Because Jehovah's Witnesses are awaiting a Kingdom, where Christ will reign as King. And his comment are [sic] that we sould [sic] not be any part of this present system of things. We therefore chose to remain nutrul [sic] to any participation in war.

The form also gave the names of Jesus Tamez, his pastor, and Anita Blanco, a neighbor, as persons who could attest to his sincerity. No other papers pertaining to the CO claim appear in the registrant's Selective Service file. The local board took no action to contact Tamez or Blanco or otherwise investigate Davila's application. The registrant's statements, if true, demonstrated the depth of his religious beliefs. They also indicated that Davila felt a duty to a Supreme Being greater than that he owed to man's laws, that he accepted his church as arbiter of God's laws, and that he understood those laws to forbid him from military service. Though inarticulately drawn, these statements satis-

fied the statutory requirements for conscientious objector status. United States v. James, 417 F.2d 826 (4th Cir. 1969).

■ Once a registrant makes out a prima facie case of conscientious objection, the local board may not deny conscientious objector status unless there appears of record evidence justifying the denial. Denial without such evidence is action without basis in fact. United States v. Wingerter, 423 F.2d 1015 [5th Cir., Feb. 17, 1970]; Kessler v. United States, 406 F.2d 151 (5th Cir. 1969). No evidence appears in this registrant's file which came to the attention of the board before the completion of the Form 150 which would justify denial. The board did not seek an interview with Davila, nor did it communicate with the references he listed or with other persons. There being no other evidence, if the denial is to stand it must do so on evidence appearing in the Form 150. Nothing in that form provided a basis in fact for the board's action. Registrant's statement that he believed in use of force "[o]nly to the point where it would endenger [sic] my life" evidences a willingness to use force if absolutely necessary in self defense. Such a belief is not inconsistent with conscientious scruples against service in war. Sicurella v. United States, 348 U.S. 385, 389, 75 S.Ct. 403, 99 L.Ed. 436, 439 (1955). The government points to nothing else in the form which would constitute a basis in fact for refusing to reclassify Davila.

■ The government's position is that this court cannot reach the issue of basis in fact because Davila failed to appeal to his Selective Service appeal board from the local board's determination and thereby failed to exhaust his administrative remedies.[1] The exhaustion requirement is no longer recognized as an absolute bar to judicial review. McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); United States v. Williams, 420 F.2d 288 (10th Cir. 1970); United States v. Davis, 413 F.2d 148 (4th Cir. 1969); Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); Wills v. United States, 384 F.2d 943 (9th Cir. 1967); Wolff v. Local Bd. No. 16, 372 F.2d 817 (2d Cir. 1967); Donato v. United States, 302 F.2d 468 (9th Cir. 1962); Glover v. United States, 286 F.2d 84 (8th Cir. 1961); United States v. Harris, 302 F.Supp. 1194 (D.Or.1968); United States v. Seeley, 301 F.Supp. 811 (D.R.I.1969); United States v. Branigan, 299 F.Supp. 225 (S.D.N.Y. 1969); United States v. Carson, 282 F.Supp. 261 (E.D.Ark.1968). McKart held as follows:

> In Selective Service cases, the exhaustion doctrine must be tailored to fit the peculiarities of the administrative system Congress has created.

Supra at 195, 89 S.Ct. at 1663, 23 L.Ed. 2d at 204.

In McKart the Supreme Court points out that the purposes of the judicially created exhaustion requirement are to allow the development of a full factual record, permit the exercise of administrative discretion or application of administrative expertise, and promote efficiency in both the agency and the courts, all by avoiding premature judicial consideration, and to recognize the autonomy of the administrators within their field of expertise. Id. at 194–195, 89 S.Ct. at 1663, 23 L.Ed.2d at 203–204. And the court discusses countervailing considerations common to all draft cases—the lack of notice to the registrant that failure to appeal will bar his raising local board errors in court;[2] the lack of any currently available remedy at the time of prosecution or petition for habeas corpus; the severity of criminal sanction, as opposed to the usual consequences of mere dismissal or delay for failure to exhaust administrative remedies; and the ability of the Selective Service System to correct errors on its own motion. Id. at 196–198,

---

1. Appellant offers no factual explanation for his failure to appeal.

2. And, inferentially, the absence of counsel to protect other rights of the registrant.

199, 89 S.Ct. at 1664, 1665, 23 L.Ed.2d at 204–205, 206 n. 17.

In the *McKart* situation, the court added two more factors, which tipped the scales against the exhaustion requirement as a bar to court review. McKart claimed the "sole surviving son" exemption, 50 U.S.C. App. § 456(*o*). His local board held that he did not qualify, since he was no longer part of a "family unit." The Supreme Court held that the existence of a family unit was not a required element of an exemption claim. As to exhaustion, it noted first that the issue of what elements McKart must prove was a question of statutory construction to which an administrative appeal board could bring no special expertise and no helpful exercise of discretion. *Id.* at 197, 198, 199, 89 S.Ct. at 1664, 1665, 23 L.Ed.2d at 205–206. Second, it found that registrant had presented sufficient facts to enable the local board to make a decision, and that "no further factual inquiry would have been at all useful." *Id.* at 198, 89 S.Ct. at 1665, 23 L.Ed.2d at 206 n. 15.[3]

The Supreme Court noted that, in the normal conscientious objector case,

the Selective Service System and the courts may have a stronger interest in having the question decided in the first instance by the local board and then by the appeal board, which considers the question anew.

*Id.* at 199, 89 S.Ct. at 1665, 23 L.Ed.2d at 206 n. 16. It remains for us to consider whether under the *McKart* balancing approach the exhaustion doctrine should be applied to bar this registrant's defense of no basis in fact for his classification.[4]

■■ Disposition of Davila's claim, like McKart's, required the application of a legal standard to an undisputed set of facts. Where the file reveals no facts refuting a registrant's claim of conscientious objection, the only question remaining is the legal issue of whether or not the registrant has made out a prima facie case for exemption. United States v. Wingerter, *supra.* The appeal board can bring no special expertise to bear on this question, and the Selective Service System's discretion is explicitly limited by the legal standard that a given minimal showing requires exemption. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ An appeal in this case could not have developed significant further facts. The former provision for referral of CO claims to the Justice Department for investigation on appeal, 50 U.S.C. App. § 456(j) (1964), was stricken from the statute by amendment in 1967.[5] The

---

3. Even before *McKart*, at least one lower court had recognized that application of the exhaustion requirement might be inappropriate where the local board, because of an erroneous view of the law, and on an undisputed set of facts, had acted without basis in fact by denying a classification for which a registrant has made out a prima facie case. United States v. Carson, 282 F.Supp. 261 (E.D.Ark.1968).

   Where the local board's error lay in declaring the registrant delinquent (and therefore subject to priority induction) because of activities protected by the First Amendment, the courts have applied similar reasoning, holding that the exhaustion requirement was no bar to review. See, *e. g.*, Wills v. United States, 384 F.2d 943, 945 (9th Cir. 1967) ; Wolff v. Local Board No. 16, 372 F.2d 817, 825 (2d Cir. 1967).

4. The Supreme Court left open the possibility that a defense of wrongful failure to grant conscientious objector status might not be barred for failure to exhaust in an appropriate case, even though the registrant's claim is in a category which requires the exercise of discretion by the Selective Service System. On the same day it decided *McKart*, it vacated the judgment in United States v. McNeil, 401 F.2d 527 (4th Cir. 1968) and remanded to the District Court for further consideration in the light of *McKart*, 395 U.S. 463, 89 S.Ct. 2025, 23 L.Ed.2d 446 (1969). The Court of Appeals had held that McNeil was exhaustion-barred from questioning in the trial court the denial of his claims for conscientious objector and ministerial exemptions.

5. In Lockhart v. United States, 420 F.2d 1143 [9th Cir., Dec. 18, 1969] (en banc),

conditions for supplementing the record by the registrant were not met in this case. See 32 C.F.R. §§ 1626.12, 1626.24.

Davila carried his burden of establishing a prima facie right to conscientious objector status under the doctrine of *Witmer*. Both considerations which prompted the Supreme Court to find exhaustion unnecessary in *McKart* are present in this case also.

Exercising judicial review in this case will not significantly encourage circumventing the administrative process by resort to the courts. As *McKart* itself notes, the opportunity to appeal is one that few registrants will knowingly forego, because of the risk incident to determining the issue of classification in court under the strict basis in fact test with the possibility of criminal conviction. 395 U.S. at 199–200, 89 S.Ct. at 1665, 1666, 23 L.Ed. at 206–207. Also, if local boards comply with the new interview requirements of amended Local Board Memorandum No. 41, see footnote 5, *supra,* there will be few cases in the posture of this one, with a prima facie case of conscientious objection made out by the Form 150 or other evidence furnished by the registrant supporting his claim, and with no countervailing evidence in the file. Thus, not only does our decision not impair the general obligation to exhaust which was left viable by *McKart,* but also, under amended procedures now in effect, it does not impair the exhaustion doctrine in its particular application to requests for conscientious objector status.

Reversed.

holding failure to exhaust a bar to review, the classification process was complete before the 1967 amendments. The earlier procedure would have significantly supplemented the record on appeal. It entailed an FBI investigation, including an interview with the registrant himself, the reports of which were submitted to the appeal board along with the file transmitted by the local board. Recognizing the practical value to the registrant of an

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

opportunity orally to present his views at some point, the National Director of Selective Service, subsequent to the 1967 amendments but too late to apply to Davila's claim, directed the local boards to hold an interview with any registrant to whom they tentatively decide to deny conscientious objector status. See Local Board Memorandum No. 41, as amended July 30, 1968.