**UNITED STATES of America ex rel. Lt. David Avila MARTINEZ, Petitioner,**

**v.**

**Melvin LAIRD et al., Respondents.**

**No. PCA 2339.**

United States District Court, N. D. Florida, Pensacola Division.

March 15, 1971.

John M. Coe, Pensacola, Fla., for plaintiff.

William Stafford, U. S. Atty., Pensacola, Fla., for defendants.

## MEMORANDUM DECISION

ARNOW, Chief Judge.

Petitioner seeks writ of habeas corpus ordering his discharge from the United States Navy as a conscientious objector. The pertinent facts are undisputed before the Court.

In September, 1964, Petitioner entered medical school at the University of Illinois. In February, 1969, he accepted appointment as a lieutenant (Medical Corps) in the Naval Reserve; this resulted in his obtaining a deferment from the draft to continue his medical training. He requested additional deferment in November, 1969, which was denied in January, 1970. In February, 1970, he requested assignment to the Navy Aerospace Medicine Program—that involved an agreement to extend his active duty obligation by six months. On October 26, 1970, after approximately one month of active duty in the Navy, but about nine months after his last record action evidencing a willing acceptance of military duty, he submitted his application for discharge by reason of conscientious objection.

Since 1962, the Department of Defense has promulgated directions setting forth procedure by which a serviceman becoming a conscientious objector while in service might apply for discharge. Applicable here are Department of Defense Directive 1300.6 of May 10, 1968, a copy of which is in evidence before the Court as Exhibit II, and the Navy's BUPERSMAN Art. 1860120 procedurally implementing and defining it, a copy of which is in evidence before the Court as Exhibit III.

Under the directive, Selective Service System standards used in determining 1–0 classification of draft registrants prior to induction apply to servicemen who claim conscientious objection after entering military service.

Under the prescribed procedure, Petitioner was required to submit an appli-

cation giving rather detailed information, which he did. Following this, and his execution of the statement required to the effect that he understood his discharge as a conscientious objector bars certain rights he otherwise had, he was afforded a hearing before an officer, Captain Balyeat. There were also a statement and report of a chaplain based on interview with Petitioner, which included his comment on his sincerity, and of a psychiatrist, based on interview with the Petitioner. All of this was in accordance with required procedure.

The chaplain stated it was his "conclusive opinion" Petitioner "is genuinely sincere in his beliefs which currently motivate his application for immediate discharge" as a conscientious objector. The psychiatrist stated "Dr. Martinez seems extremely sincere concerning his beliefs." The hearing officer, following hearing, recommended his discharge from naval service and that he be designated a Class 1–0 conscientious objector and serve his obligated time as assigned by Selective Service in an appropriate civilian work program. The matter then went to the Chief of Naval Personnel who, under the procedure, made final determination.

Notwithstanding the recommendations of the hearing officer, he denied the application. In doing so he used this language:

"In February 1969 you accepted your appointment as a Lieutenant (Medical Corps) in the Naval Reserve and took the oath of office 'freely without any mental reservation'. By this action you obtained a deferment from the draft which allowed you to continue your training. It is noted that you undertook this commitment approximately a year after your experiences as a volunteer physician in Vietnam. In November 1969 you requested an additional deferment, which was denied in January 1970, and in February 1970 you requested assignment to the Navy Aerospace Medicine program even though you knew it involved an agreement to extend your active duty obligation. Your actions do not reflect the deep, life-controlling beliefs of the true conscientious objector. Accordingly, your request for classification as a conscientious objector is disapproved."

The only real issue here is the question whether there is, on the record, basis in fact for the Chief of Naval Personnel's determination of lack of sincerity by Petitioner in his stated beliefs.

His beliefs, if held sincerely, qualify him as a conscientious objector unable to participate in war in any form, under the guidelines laid down in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), Pitcher v. Laird, 421 F.2d 1272 (5 Cir. 1970), and other cases dealing with this troublesome subject. In argument before the Court, no serious contention otherwise is made by Respondents, nor, indeed, could such be made, for the record is clear on this.

■ It is also clear on the record that his beliefs, if sincerely held, grew out of experiences prior to entry into military service that became fixed after entry into service, thus entitling him to have his claim considered under the Department of Defense and Navy directives, as well as under applicable case law.

■■ Sincerity, being subjective, is difficult of determination. That it is, however, will not permit its determination to rest on the speculative conclusion of the determining authority. As pointed out in the recent case of Helwick v. Laird, 438 F.2d 959 (5 Cir. 1971), a case in many respects factually similar to this one, the determining authority is not at liberty merely to disbelieve the claimant. There must be some hard, provable, reliable facts that provide a basis for disbelieving the applicant—some affirmative evidence or something in the record which substantially blurs the picture painted by applicant and thus casts doubt on his sincerity. Un-

**714**

der the "no basis in fact" test, doubt as to the applicant's sincerity cannot be predicated on mere speculation. Bates v. Commander, 413 F.2d 475 (1 Cir. 1969). In Application of Tavlos, 429 F. 2d 859 (5 Cir. 1970), background actions of Tavlos similar to those relied on by the Chief of Naval Personnel to reach a determination of insincerity were held, absent other supporting evidence in the record, insufficient by themselves to constitute a basis in fact for a determination of insincerity.

■ Here the Chief of Naval Personnel made it clear he reached his conclusion of insincerity because of Petitioner's *prior actions in accepting appointment, obtaining deferment, service as a volunteer physician in Viet Nam, and requesting assignment to the Navy Aerospace program.* As the cases cited herein point out these facts, standing alone, are not sufficient to support a determination of insincerity.

And here these facts do stand alone. The Chief of Naval Personnel's determination of insincerity not only runs contrary to the evidence presented, but contrary as well to those of the other three officers who, under prescribed procedure, interviewed, or held hearing concerning, applicant, and to their recommendations.

■ That applicant's beliefs became fixed and crystallized after his military service began is no ground to deny discharge where, as here, his beliefs are the result of religious training and belief, within the meaning of the decided cases, and his beliefs are sincerely held. Capobianco v. Laird, 424 F.2d 1304 (2 Cir. 1970); United States v. Bornemann, 424 F.2d 1343 (2 Cir. 1970); United States v. Broyles, 423 F.2d 1299 (4 Cir. 1970); United States v. Martin, 416 F.2d 44 (10 Cir. 1969); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4 Cir. 1969); Application of Tavlos, supra.

The record here does not present, as in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955),

Carson v. United States, 411 F.2d 631 (5 Cir. 1969), and other cases inconsistent actions or statements of Petitioner sufficient to cast doubt on Petitioner's sincerity. To the contrary, the record is wholly consistent with sincerity. The Chief of Naval Personnel's contrary conclusion, supported only by the chronology of events to which he refers, and contrary to all other evidence and the conclusions and recommendations of all others involved in fact finding in the administrative process, must be characterized as based on speculation, without factual basis to support it.

Under the Navy and Defense Department regulations, this applicant, having less than 180 days' service, should be discharged from service, with, however, the Selective Service System promptly notified of date of discharge, the fact that applicant has not completed 180 days active duty, and with the System requested to induct applicant for the alternate civilian work administered by it. That is the procedure that should be here followed.

In accordance with the foregoing, by separate order the writ sought will be issued and applicant's immediate discharge from service ordered.