UNITED STATES of America ex rel.
Lt. Walter B. GREENWOOD,
Appellant,

v.

Stanley R. RESOR, Major Gen. Kenneth
J. Wickham, Brig. Gen. Ira A. Hunt, Jr.,
Colonel H. S. Lowe and Col. John H.
Hoffman, Appellees.

No. 15392.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 4, 1971.

Decided April 12, 1971.

Gaillard T. Hunt, Washington, D. C., for appellant.

David Hopkins, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief) for appellees.

Before HAYNSWORTH, Chief Judge, and BRYAN and BUTZNER, Circuit Judges.

BUTZNER, Circuit Judge:

Water B. Greenwood, a reserve army officer currently serving on active duty, appeals the dismissal of his petition for a writ of habeas corpus in which he seeks discharge from the Army as a con-

scientious objector. The scope of our review is limited to determining whether the record discloses a basis in fact for holding that Greenwood was not a conscientious objector. United States ex rel. Brooks v. Clifford, 409 F.2d 700, 705 (4th Cir. 1969). Finding none, we reverse.

Greenwood enrolled in ROTC during his undergraduate years at the University of Richmond and the University of Oregon. He was commissioned a second lieutenant in 1967, but his active duty was delayed for two successive 1-year periods so that he could engage in graduate studies. During the summer of 1968, he became concerned with what he viewed as the purposelessness of his life. Responding to an increasing despair, he studied the philosophy of religion and began attending services at the Cooperative Christian Ministry, an interdenominational Protestant group at the University of Oregon. Under the guidance of an ordained Methodist minister, he developed a religious faith, and in his words, he became "convinced that military service of any kind would be irremediably opposed to my faith in Christ, and that I must remain true to that faith." In February 1969, he formally notified the Army that he desired discharge as a conscientious objector. His application was denied, and he was ordered to active duty.

■ Greenwood has a right to a discharge if he, "by reason of religious training and belief, is conscientiously opposed to participation in war in any form." Universal Military Training & Service Act § 6(j) [50 U.S.C. App. § 456(j) (Supp. III 1967)]; Department of Defense Directive 1300.6 § IV (1968). There is no question Greenwood claims that he objects to war in any form and that his religious training and belief are based on traditional Protestant Christianity. The government concedes, therefore, that the beliefs he professes are embraced by the statute as interpreted by Welch v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). But one who claims to be a conscientious objector must also establish that his religious convictions are "truly held." United States v. Seeger, 380 U.S. at 185, 85 S.Ct. 850. Therefore, the only substantial issue in this case is whether there exists a basis in fact for the Army's determination that Greenwood is insincere.

■ Pursuant to Army Regulation 135–25 § 7,[1] Greenwood appeared before a chaplain, a psychiatrist, and an officer who is required to be knowledgeable in policies and procedures relating to conscientious objectors. The chaplain whose function it is to evaluate the sincerity and religious basis of an applicant's beliefs found Greenwood "to be a sincere conscientious objector." The medical officer is required to determine whether the applicant needs psychiatric treatment and whether his request for discharge should be disposed of through medical channels. He examined Greenwood and found no mental disorder.[2] Responsibility for recommending approval or disapproval of an application lies with the hearing officer. He recom-

---

1. AR 135–25, which implements DOD Dir. 1300.6, governs the disposition of conscientious objector applications submitted by Army reservists not on active duty. It corresponds to AR 635–20, which was discussed in United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969).

2. AR 135–25 § 7b(1) and (2) expressly directs that neither the chaplain nor the psychiatrist should make a recommendation for approval or disapproval of an application for discharge as a conscientious objector. Despite this prohibition, the chaplain recommended approval, the psychiatrist disapproval, and the Army Conscientious Objector Review Board relied in part on the psychiatrist's recommendation. In these matters Army regulations should be scrupulously followed. United States ex rel. Brooks v. Clifford, 409 F. 2d 700, 706 (4th Cir. 1969). Therefore, we give no weight to the recommendations of either officer and we disregard whatever weight they were given by the Review Board.

mended that Greenwood's request for discharge be denied and that he be assigned to noncombatant duties.

In support of his conclusions, the hearing officer found that the group sponsoring the ecumenical services Greenwood attended "fosters sociological and political concepts and activities which encourage evasion of military obligations." Since Greenwood was an ROTC graduate who apparently accepted the program until his obligation to serve was imminent, the hearing officer found it "impossible for me to clearly conclude 2d Lt. Greenwood's motivation is solely from religious or ethical convictions." He decided instead that "Greenwood's conscientious objection is based on a personal ethical concept." The hearing officer's report, however, was made before the decision of Welch v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), and the nature of Greenwood's beliefs, as we have previously mentioned, is conceded by the government to be no longer in issue.

On the essential issue of sincerity, the hearing officer's recommendation is significant. He could not find Greenwood insincere and at the same time recommend that he be assigned noncombatant duties. Under AR 135–25 § 2(b) and (c), an applicant can be classified as a noncombatant only if he has been found to be a conscientious objector. In this respect AR 135–25 parallels the Selective Service classification by distinguishing between conscientious objectors who by reason of religious training and belief are conscientiously opposed only to combatant training and service in the armed services (I–A–O) and those who for the same reason oppose both combatant and noncombatant service (I–O). 32 C.F.R. §§ 1622.11 and 1622.14.

Greenwood's commanding officer then denied his application and forwarded his records to the Army Conscientious Objector Review Board.[3] The Board, like the hearing officer, questioned the nature of Greenwood's views, holding that his objection to war is based solely on philosophical views and sociological experiences. Were this the only conclusion of the Board, we could readily dispose of this case because, as we have mentioned, the nature of Greenwood's views is no longer an issue.[4] The Board went further, however, ruling for a number of reasons that Greenwood's conscientious objector beliefs are not truly held.

First, said the Board, Greenwood relied on Biblical passages merely to add theoretical strength to his claim. The regulations, however, call upon an applicant to "provide a description of the nature of the belief which is the basis of his claim." AR 135–25 § 6a(2). It would be difficult, if not impossible, for a conscientious objector of the Christian faith to comply with this regulation without reference to the Bible. Furthermore, as the regulation indicates, the interviewing chaplain is in the best position to determine whether there is a religious core to an applicant's belief. The chaplain had no criticism of Greenwood's Biblical quotations, and, indeed, he found that Greenwood "has based his beliefs upon scripture and upon a new spiritual experience." Since the record contains no evidence that Greenwood's references to the Bible are cant and hypocrisy, they cannot disqualify him.

3. Greenwood's commanding officer disapproved the hearing officer's recommendations because Greenwood had accepted the benefits of the ROTC program and because he submitted his application so close to the time his active duty was scheduled to begin. The Board also relied in part on these reasons, and we discuss them later.

4. The Board, before reviewing Greenwood's application, sent his records to the Direc-

tor of the Selective Service System for his opinion as to whether Greenwood would have been classified a conscientious objector had he sought exemption from the draft. The Director advised that Greenwood would not have been so classified, but he gave no reasons to substantiate his opinion and no weight can be attached to it. Bates v. Commander, 413 F.2d 475, 478 (1st Cir. 1969).

■ The Board deemed Greenwood's qualifications on the use of force to be inconsistent with the stand taken on this subject by a true pacifist. Precedent, however, establishes that Greenwood's views do not warrant denial of his discharge. In his application and at his interview with the chaplain, Greenwood rejected the use of force through warfare, but conceded that force may be necessary when applied as a last resort against an individual lawbreaker. He expressed reluctance to resort to violence himself, adding that in his view, force begets force, and the better course is to respond to aggression with manifestations of Christian love. At most his statements indicate only a partial acceptance of the use of force in self-defense. This, however, does not bar his discharge, for even the outright willingness to resort to force in self-defense is not inconsistent with conscientious objection. United States v. Davila, 429 F.2d 481, 483 (5th Cir. 1970); see Sicurella v. United States, 348 U.S. 385, 389, 75 S.Ct. 403, 99 L.Ed. 436 (1955) (government concession).

■ The Board also criticized Greenwood because he sought advice from a draft information and counseling center. However, AR 135–25 § 7b(3) specifically authorizes an applicant to have counsel represent him. The difficulties of processing an application for a conscientious objector discharge through administrative channels and the courts are not inconsiderable, and an applicant does not demonstrate insincerity by seeking expert advice.[5]

The Board also considered that since Greenwood applied for conscientious objector status shortly before he was scheduled to go on active duty, the tim-ing of his application cast doubt on his sincerity and motivations. In addition, it ascribed to Greenwood use of the ROTC program to evade the draft. Again, it is difficult to reconcile the Board's reasoning with AR 135–25. This regulation provides the sole administrative relief for officers commissioned through the ROTC who are in an inactive reserve status. Equally important, the regulation denies consideration to the request of a reserve officer whose conscientious objection existed, but was not claimed before his initial entry into service. AR 135–25 § 5c(1). As Judge McEntee observed in a similar situation, Bates v. Commander, 413 F.2d 475, 478 (1st Cir. 1969):

"By the Commandant's reasoning, therefore, petitioner's claim cannot be considered if it arose prior to his enlistment and is evidence of insincerity if it arose afterwards. By the force of this logic, no member of the armed services could ever qualify as a conscientious objector."

Moreover, this court has held that neither impending military duty, United States ex rel. Lehman v. Laird, 430 F.2d 96, 99 (4th Cir. 1970), nor the voluntary assumption of military obligation, United States ex rel. Tobias v. Laird, 413 F.2d 936, 939 (4th Cir. 1969), nor the advanced stage of an applicant's training, United States ex rel. Brooks v. Clifford, 409 F.2d 700, 707 (4th Cir. 1969), are sufficient grounds for rejecting his claim.

In compliance with AR 135–25 § 6a(4), Greenwood submitted several letters attesting to his sincerity. Among them was one from his father, a retired colonel in the United States Marine Corps Reserve, who although disagree-

---

5. The complexities of the procedures for obtaining a conscientious objector discharge are amply demonstrated by this case. After Greenwood's application was denied by the Army Conscientious Objector Review Board, he applied to the Army Board for Correction of Military Records, an administrative step required in the Ninth Circuit by Craycroft v. Ferrall, 408 F.2d 587 (9th Cir. 1969), vacated and remanded, 397 U.S. 335, 90 S.Ct. 1152, 25 L.Ed.2d 351 (1970), but not in this circuit, United States ex rel. Brooks v. Clifford, 412 F.2d 1137 (4th Cir. 1969) (rehearing). He then sought a writ of habeas corpus in the District of Oregon, which was dismissed for lack of jurisdiction. He reapplied in the Eastern District of Virginia, and from an adverse decision there, he appealed to this court.

ing with his son's opposition to military service, was convinced that he is "honest in his claim that he is a conscientious objector to war." Greenwood's professor of philosophy and religion, who had served in World War II as a chaplain, wrote that Greenwood "impresses me as entirely trustworthy in character; and judging by his conversations in class discussion, I believe his thought to be consistent with his stand as a conscientious objector to war." Inexplicably, the Board dismissed these letters with the observation that they established little more than that Greenwood is intelligent, sensitive, and had only recently become actively affiliated with an organized religious body. But even if we were to accept the Board's characterization of them, they furnish no ground for inferring that Greenwood is insincere.

█ Greenwood has satisfied the requirements of § 6(j) of the Universal Military Training and Service Act and of AR 135–25. No basis in fact exists in his administrative record for denying him a discharge as a conscientious objector.

Reversed.