David M. BORKENHAGEN

v.

Melvin LAIRD et al.

Civ. A. No. MC 72–178–F.

United States District Court,
D. Massachusetts.

April 15, 1975.

John G. S. Flym, Boston, Mass., for petitioner.

Marshall Stein, Asst. U. S. Atty., Boston, Mass., for respondent.

## OPINION

FREEDMAN, District Judge.

Petitioner, David A. Borkenhagen, brought this habeas corpus action on December 12, 1972, seeking a discharge

from the United States Air Force on the grounds that he is a conscientious objector ("C.O."). Since he was at that time under orders to report for active military duty on January 7, 1973, this Court granted, on January 5, 1973, his prayer for injunctive relief pending a determination of the merits of his petition. The present opinion is such a determination.

The facts herein are not in dispute. Petitioner is a physician, residing in Massachusetts, who joined the Air Force Reserves in 1967 under the provisions of the Armed Forces Physicians Appointment and Residency Consideration Program ("Berry Plan"). This plan permitted him to pursue specialized medical training through internship and as a resident rather than face the possibility of immediate call to active duty under the Doctor Draft. Under the Berry Plan, he agreed that upon completion of this further training he would serve two years of active military duty, practicing the specialty for which he was trained.

Although the petitioner's medical training was originally to have concluded in June, 1971, he requested an additional year of deferment by letter dated November 10, 1970 in which he stated, "I remain interested in service in the U.S.A.F., and, of course, realize that my commitment to serve under the Berry Plan agreement after specialty training in cardiology would not be altered by continued deferment through July 1972." His request for an extension was finally granted but not before extensive "negotiations" with Air Force personnel during which the petitioner expressed ". . . an interest in giving the U.S. A.F. additional time beyond a minimum two years of active duty."

The petitioner was notified by letter dated September 1, 1971 that he was programmed for active duty beginning sometime during the period July–October, 1972. On November 29, 1971, Dr. Borkenhagen notified the Air Force, for the first time, that he had become a conscientious objector. In accordance with instructions from Air Reserve Personnel Center ("ARPC"), the petitioner submitted his resignation from the service on January 28, 1972. Accompanying the resignation was his completed application for discharge which included, *inter alia*, a philosophical and religious autobiography and numerous letters of reference from his family, friends, associates and superiors, all of whom attested to the sincerity of his beliefs. Also included in the application was a memorandum from Air Force Chaplain Henry Guikema whom the petitioner had been instructed to meet. The Chaplain was convinced that Dr. Borkenhagen's beliefs were honest, sincere and consistent with his application for conscientious objector status.

On March 8, 1972, a hearing was held concerning petitioner's C.O. claim at Hanscom Field, Bedford, Massachusetts, before the hearing officer, Lt. Col. John T. Murphy. Petitioner was present with counsel. On May 8, 1972, the hearing officer issued his report recommending rejection of petitioner's resignation and denial of his C.O. application. The hearing officer's rationale for his recommendation will be discussed later.

The hearing officer's recommendation was forwarded to Col. Mack E. Schwing, Jr., U.S.A.F., Staff Judge Advocate, who completely disagreed with the hearing officer's conclusions. Col. Schwing's recommendation of August 1, 1972—that the petitioner should be discharged as a C.O.—was concurred in by Col. Benjamin S. Catlin, III, U.S.A.F., ARPC Commander, one of the named respondents herein.

On August 23 and 28, 1972, the ARPC Director of Personnel Actions and Kenneth W. Henschel, Chaplain Major, U.S. A.F., Special Assistant, Command Chaplain, Randolph Air Force Base, Texas, Headquarters, Air Force Military Personnel Center ("AFMPC") respectively recommended acceptance of petitioner's resignation from the military.

On August 30, Captain Raymond R. McClean, U.S.A.F., M.S.C., Medical Per-

sonnel Procurement Division, Office of the Surgeon, doubting the sincerity of the petitioner, recommended disapproval of the petitioner's resignation.

On September 11, 1972, Capt. Christopher A. Somers, U.S.A.F., Directorate of Personnel Program Actions, acting for the Commander of AFMPC, recommended approval of petitioner's classification as a C.O. and acceptance of his resignation.

On October 18, 1972, Brig. Gen. Frank O. House, U.S.A.F., Director of Civil Law, Office of the Judge Advocate General, recommended disapproval of petitioner's application.

Finally, on October 31, 1972, Dr. Borkenhagen was informed that the Secretary of the Air Force had declined to classify him as a C.O. and did not accept his resignation from the military. It is this denial of the petitioner's application, from the highest Air Force appellate administrative office, that is the subject of this petition for a writ of habeas corpus.

The task of the Court in reviewing a denial of an in-service conscientious objector application is to determine (1) if the application stated a *prima facie* case for the status requested; (2) if the application was handled in a procedurally correct manner; (3) if legally adequate reasons were stated for the denial of the request; and (4) if there was a "basis in fact" supporting the reasons given. Frisby v. Larsen, 330 F.Supp. 545, 546 (N.D. Cal.1971). *See,* Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968); Bates v. Commander, First Coast Guard District, 413 F.2d 475 (1st Cir. 1969).

■ The applicant has the initial burden of establishing a *prima facie* case. United States v. Edwards, 450 F.2d 49 (1st Cir. 1971). To overcome his burden he must ". . . satisfy three basic tests. He must show that he is conscientiously opposed to war in any form. Gillette v. United States, 401 U.S. 437, [91 S.Ct. 828, 28 L.Ed.2d 168]

(1971). He must show that this opposition is based upon religious training and belief, as the term has been construed . . . [by the Supreme Court]. United States v. Seeger, 380 U.S. 163, [85 S.Ct. 850, 13 L.Ed.2d 733] (1965); Welsh v. United States, 398 U.S. 333, [90 S.Ct. 1792, 26 L.Ed.2d 308] (1970). And he must show that this objection is sincere, Witmer v. United States, 348 U.S. 375, [75 S.Ct. 392, 99 L.Ed. 428] (1955)." Clay v. United States, 403 U.S. 698, 700, 91 S.Ct. 2068, 2070, 29 L. Ed.2d 810 (1971).

■ A *prima facie* case is established when an applicant ". . . makes non-frivolous allegations of facts that . . ., if true, would be sufficient . . . to warrant granting the requested reclassification, unless the truth of these new allegations is conclusively refuted by other reliable information. . . ." Mulloy v. United States, 398 U.S. 410, 416, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970). Such facts, "not refuted by reliable information", were alleged here. In his eloquent statement of personal views and training, Dr. Borkenhagen described those persons, books, religious and philosophic beliefs, events and personal experiences which led him to conclude that "I cannot aid in any way an apparatus which provides the means for waging war. I cannot, in conscience, participate in military practices of any kind." Fourteen references and an Air Force Chaplain attested to the sincerity of his beliefs in reaching this conclusion. In sum, there is no question that Dr. Borkenhagen established a *prima facie* case here.

■ Nevertheless, the petitioner was denied a discharge by the Secretary who declared that "the record does not substantiate that [your] beliefs are sincere." Although, of course, lack of sincerity is a valid legal rationale for rejection of a C.O. application, Witmer v. United States, *supra,* there must be a "basis in fact" for this rationale. Bates v. Commander, First Coast Guard District, *supra;* Estep v. United States,

327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946). That is, before this Court can uphold the Secretary's decision, there must be ". . . some affirmative evidence to support the rejection of the claimed exemption or there . . . [must be] something in the record which *substantially* blurs the picture painted by the [petitioner] and thus casts doubt on his sincerity." Kessler v. United States, 406 F.2d 151, 156 (5th Cir. 1971).

Apparently, the Secretary, and all those who doubted petitioner's sincerity and thus recommended disapproval of petitioner's application, relied upon the reasoning of Col. Murphy, the hearing officer. In his report recommending rejection of petitioner's C.O. application, Col. Murphy stated:

> In evaluating the basic sincerity of the applicant, I found that his affirmative acts within the year prior to his CO declaration negate a finding that his conscience would give him no rest or peace if required to serve. The following factors were considered:
>
> (a) The applicant is now thirty-four years old and was therefore, a mature, well-educated adult when he took his oath of office and incurred his service obligation.
>
> (b) During the period between 10 November 1970 and 11 February 1971, Captain Borkenhagen made representations both verbally and in writing concurring his active duty commitment which I find to be totally inconsistent with those which would reasonably be expected from a person with deepening objector beliefs. In letters he recognized his impending service without reservation. . . . he even projected an affirmative interest in service beyond the required two years. Absent some particular event occurring thereafter, which could reasonably result in a radical change of the depths of his beliefs, I have concluded that even prior to crystallization there would be a continuing building of CO beliefs which

would influence the life style of a sincere applicant. . . ."

■ It seems that the hearing officer based his findings upon the misconception that there must be a crystallizing event or catalyst in the life of a member of the military before he can sincerely claim to be a conscientious objector. Although the petitioner speaks of the Vietnam War's profound effect upon him, there is no requirement that there be such an event or catalyst. It is sufficient that the applicant's views concerning his participation in the military do change. In his application and testimony, Dr. Borkenhagen explained that while his underlying beliefs did not change, his conception of the role of the noncombatant physician did change. This type of change was recognized as valid in Helwick v. Laird, 438 F.2d 959 (5th Cir. 1971), where the applicant ". . . after entering the Army . . . came to realize that the purpose of the medical corps—like that of other noncombatant elements—is to support the partisan efforts of the combat forces." 438 F.2d at 966. *See,* Frisby v. Larsen, *supra,* 303 F.Supp. at 549, n. 17. There is nothing in the record to rebut Dr. Borkenhagen's statements that this type of change occurred.

The remainder of the hearing officer's reasoning boils down to the supposed inconsistency between the "affirmative acts" performed by the petitioner and his applying for C.O. status. This line of reasoning, however, has been rejected by those courts that have had the opportunity to comment upon it.

In United States ex rel. Greenwood v. Resor, 439 F.2d 1249 (4th Cir. 1971), the petitioner had filed his C.O. application after he had enrolled in ROTC and had received two additional deferments from active duty so that he could pursue his graduate education. The petitioner's commanding officer and the Army Conscientious Objector Review Board doubted his motivation and sincerity because "[he] had accepted the

benefits of the ROTC program and because he submitted his application so close to the time his active duty was scheduled to begin." *Id.* at 1251, n. 3. In reversing the decision below, the Appeals Court stated ". . . that neither impending military duty . . ., nor the voluntary assumption of military obligation, . . . nor the advanced stage of the applicant's training, . . . are sufficient grounds for rejecting his claim." *Id.* at 1252.

The case of United States ex rel. Martinez v. Laird, 327 F.Supp. 711 (N.D. Fla.1971), is directly on point. In that case, the Chief of Naval Personnel found the applicant to be insincere, and therefore, he rejected the applicant's claim for C.O. status. The sole basis for the Chief's finding of insincerity was the fact that petitioner had (1) accepted, in February 1969, an appointment in the Medical Corps of the Navy Reserve which allowed him to continue his civilian medical training, (2) requested an additional deferment in November 1969, and (3) asked to be assigned to the Navy Aerospace Medicine program which necessarily involved a commitment to extend his active duty commitment. The Court, after noting that a determination of insincerity must be based upon "hard, provable, reliable facts that provide a basis for disbelieving the applicant," *Id.* at 713, held that the petitioner's prior actions, "standing alone, are not sufficient to support a determination of insincerity." *Id.* at 714.

In the present case, the "affirmative acts" performed by Dr. Borkenhagen consisted essentially of his requesting a postponement of his active duty obligation and his stating that he had an interest in serving beyond his present active duty commitment. Yet, to draw a conclusion of insincerity from them solely because they seem to conflict with a later claim of conscientious objection to war is to indulge in pure speculation. It is also to penalize an applicant for prior service in the military. At best, this supposed conflict does not rise to the status of ". . . hard, provable, reliable facts that provide a basis for disbelieving the applicant . . . ." *Id.* at 713. As such, it cannot serve as a "basis in fact" for denying the petitioner's application.

On the other hand, the petitioner's claim of sincerity is amply supported by numerous letters of reference and by the recommendation of the Air Force Chaplain. There is nothing in the record to rebut the petitioner's *prima facie* case. Therefore, the Secretary's denial of the petitioner's application was contrary to law. Consequently, it is Ordered: that Dr. Borkenhagen's petition for a writ of habeas corpus be, and it hereby is, allowed. The respondents shall issue the appropriate orders discharging the petitioner, Dr. Borkenhagen, from the United States Air Force Reserve.